May it please the Court, Steve Bushong appearing on behalf of the State of Oregon. This case involves the constitutional validity of an Oregon statute that establishes part of the content of a ballot title for a local tax measure. The District Court ruled that the statute is unconstitutional, both on its face and as applied to the election on the Yamhill County measure that was at issue. The as applied part was now mooted by the election on that measure. So I'm going to focus my arguments this morning on the facial challenge. And in order to understand why this statute on its face does not violate either the First Amendment or the Due Process Clause, I'm going to take just a moment to talk about the context in which it arises under Oregon law. Because the statement that's required by ORS 280.0704 is part of a larger statute. Under the same statute, the ballot title must also include the number of years that a local tax will be imposed, the first year that that tax will be imposed, and the total amount in terms of dollars and cents that would be raised by that tax. Also, under Oregon law 250.035, the ballot title has to have a 10-word caption that kind of summarizes what it's about, a 20-word question that is the question that the voters are going to be voting on, and then a maximum 175-word summary, which is required to be concise, impartial, that summarizes the measure and its major effects. There is also a process under Oregon law for an elector to challenge the fairness, the impartiality of any ballot title that's created, and that's under ORS 250.195. If an elector thinks it's unfair or misleading, they can bring that challenge in circuit court in Oregon. Would that challenge permit a challenge to the particular language that was included here under the requirements of the statute? We believe it does. Could a court say, if it's power to carry challenges derived from the same statute that requires this language to be inserted, could a court say that this language should be excised? A court could say that. A court could also add additional language to make it more clear what the effect of the measure is. I don't think the court would be limited in its remedy if it found that the ballot title as a whole, with all the information included on it, is misleading or unfair in some way. What's the significance to us of the court having that authority? The significance is that this court, in assessing the First Amendment challenge, will have to look at the ballot title as a whole, not just the particular language that's at issue in this case, and determine whether the ballot title would be unfair, misleading, violation of either the Due Process Clause or the First Amendment. And the fact that there's a process available under state law, I think the court can assume on a facial challenge that the state courts are going to comply with the First Amendment and the due process requirements in addition to complying with the statutory requirements in crafting a ballot title that is fair and not misleading. Let me make certain I understand what you refer to, ballot title. I've seen the sample ballot and so forth. What's the ballot title? The ballot title under Oregon law, under the Oregon statute, includes all of that information. It includes the 10-word summary, the 10-word caption, the 20-word question, and then the 175-word summary, all by statute, are part of the ballot title. Now, here we have, it's interesting that we have due process and First Amendment challenges to statutes that specify what's on the ballot title. The cases that are cited in the briefs that deal with misleading ballot titles are all due process cases. The two main ones are the National Audubon Society case from the Ninth Circuit and then the Burton v. State of Georgia from the Eleventh Circuit, which National Audubon Society relies on. The test, both cases involved a challenge that the ballot title, the information submitted to the voters on the ballot is misleading in some way. And the test is a very low hurdle. The test that the court established in National Audubon Society v. Davis is as long as the voters can recognize what it is they're voting on, that's enough to satisfy due process. And I think an important consideration is why that's the test. What's the reason for that? The court didn't explain very much in National Audubon Society what the reason for that would be, but the court in Burton, the Eleventh Circuit case that National Audubon Society relies on did explain. And the reason the court explained there is the ballot itself, it's not a forum for speech. What it is is a mechanism for conducting an election. And a ballot by its nature, by definition, is a shorthand. It doesn't summarize, it cannot possibly explain all the nuances of either a ballot measure or a candidate's position. It's a shorthand so that the voters know what it is that they're voting on. But in terms of educating themselves about all of the effects of the measure, the way the due process clause works, the courts rely on voters to understand and to educate themselves about all the nuances of the measure. So I don't think the due process, even though the cases that come up are due process cases, I think that does help us to understand a little bit the First Amendment issue, if I may. And I think the question here under Buckley v. ACLF, the main U.S. Supreme Court case, the court says the test is whether the restriction in question significantly inhibits communication with voters about a proposed political change and are not warranted by the state's interest alleged to justify those restrictions. And that's where this case is different from the prior cases in which state laws restrict the number of circulators that could be out there circulating a petition to get onto the ballot. Those cases are different. And the reason they're different is because this case involves the creation of the ballot itself. So by definition, the measure already is on the ballot. It's already the subject of discussion in this case within the local community, within the county. A lot of things are on the ballot that aren't much talked about by average citizens in day-to-day life. People wind up getting their information, particularly in states that put a lot of things in the ballots. And I regret mine is not one of them. But in states that do, I understand that they have lots of initiatives. You may have lots of things in the ballot. And even I go into the election voting booth with Board of Education candidates and try to figure out who the heck those people are. So I understand on one level, yes. But on another, sometimes all someone knows is what they read from that ballot. That can be the case. But I think that the test under the due process cases is that we assume that the voters understand just from what's on the ballot what it is they're voting on. That's enough. Then it's up to the voters themselves to educate themselves about the nuances of the measure. That's the requirement. And then with respect to the First Amendment challenge, the question is, does this listing of information on the ballot inhibit someone's right to communicate about this measure? And that's the difference between this case and the ACLF versus Buckley or Buckley versus ACLF, Meyer versus Grant, the Supreme Court cases that limit the number of voices that can carry the message to the community. That's a different case. That's in order to get onto the ballot. I think you're explaining why we should be applying the due process rather than First Amendment standards. But let me focus on I think the source of concern, which I'll call the thumb on the scale effect of this language. Because in your brief you acknowledge, I think to your credit, that this may not be the world's greatest language in terms of explaining what's at issue. If you view the key sentence, and possibly even the key sentence in the context of the ballot title as used in Oregon law, the possibility of a misleading impression is hard to avoid. Now you also argue that if you put it in the context of recent Oregon political history and the limitations on real property taxes and assessments and so forth, it becomes more understandable. But again, we're looking at the one piece that the voter has in front of himself or herself when they go into the vote, and that may be the primary source of information. Isn't there a problem here because the language is so potentially misleading? I don't think there's a problem in terms of the validity of the statute on its face because of the other information that's required by Oregon law to be on the ballot as part of the ballot title. It's not just this statement. It is this statement plus the explanation of the intended effects of the measure, the explanation of the exact amount in terms of dollars and cents that will be raised. Take the Yamhill County measure as an example, although that claim is moot. It was a very small tax. It would be a 45 cent increase in tax if you had a $150,000 house. And that was stated on the ballot itself. So I think in context, was that ballot misleading or would it be misleading if the warning statement had been left on the ballot? I don't think you can say as a matter of law that it would. Certainly not, it doesn't, it's not a violation of the due process test because voters know that they're voting on a tax to pay for a report regarding the creation of a public utility district and they know that it's a very small amount of a tax because the total amount raised by the measure in this case was $9,700. So they know that. That information is before the voters and looking at all of the information, not just this language in isolation, I don't think you can say that it's automatically a violation of either the Due Process Clause or the First Amendment. The First Amendment analysis asks two questions. Does this significantly inhibit communication? And Judge Clifton, you put your finger on the heart of the issue. It could be viewed as a thumb on the scale. Does that inhibit communication significantly about the measure? I don't think it does. Certainly it doesn't to the extent that the state's interest in calling to the attention to voters that they are waiving a right that they had previously adopted by amending their Constitution. They are waiving this absolute 3% cap on their tax increases. Is there a 3% cap on tax increases as such? I understand there may be one on assessments and that there may be limits on the tax rates and somehow those combine, but do they combine so clearly to say that there's a 3% cap on tax increases? I read that in the brief and I think the answers are the same. I explained that in our opening brief on page 19 in footnote 63, how an increase in an assessment of 3% actually is an increase in the taxes. The amount of the check that the taxpayer has to write is also a 3% increase. And if you raise the rate, even by the 45 cents that the Yamhill County measure would raise, then the overall increase in the amount of the check that the taxpayer has to write from his prior year's taxes would be 3.019%, which is more than 3%. And the plaintiffs in this case acknowledge that that's true, that certainly could be true for every taxpayer whose assessment goes up by the maximum amount allowed by law. So you're saying just as a matter of math, this is always true? As a matter of math, it always is true. If the assessment goes up by the maximum. Not every property will go up by the maximum. The statute does say it may cause, and I think that's enough. Again, I would acknowledge that it could be explained more artfully, certainly, but I think in terms of using the ballot as kind of a shorthand, which it always is, it's always a good idea to use the ballot as kind of a shorthand. I think it would be simpler, for instance, just to say the 3% limit does not apply to any taxes raised by this measure, right? I agree with that, Your Honor. I think there are many ways you could write this statute. There are many ways you could write this in a better way and it would be more straightforward. Again, that's not the test, though. Under the case law, the fact that it could be written more artfully and more clearly doesn't mean that the way that the Oregon legislature chose to wrote it. And what's the primary case you depend on? The two cases that talk about misleading ballots is the Ninth Circuit cases, National Audubon Society versus Davis. Those aren't First Amendment cases. They're not First Amendment. And there is no case that addresses a First Amendment challenge, whether a ballot, the content of a ballot, would violate the First Amendment rights of people who are of a voter or a proponent of the measure. I think there's a reason why there's no case on that. One of the reasons is because the ballot's not a forum and people don't have a right to speak out and express their views on the ballot itself. And I think the other reason is because the ballot, the content of the ballot does not violate, does not inhibit expression, restrict expression at all about the measure in question. That's why there are no First Amendment cases on point. The First Amendment case that discusses petition circulators, the key case that both parties address in the brief is Buckley versus ACLF. And that's the case. And as I explained, that's a different question. Well, because there it could inhibit the speech of the petitioners, petition gatherers. It could very well. And limit the number of voices that would be available to carry the measure. With that, I see I'm going to save the rest of my time for rebuttal unless there are further questions that I need to address now. Thank you. Thank you. May it please the court, my name is Dan Meek. I represent the plaintiff in this case, Michael Caruso, who was a petitioner for a ballot measure in Yamhill County to create a people's utility district, which would then be in a position to acquire the assets of the local privately owned utility, Portland General Electric Company, which was owned by Enron then and continues to be owned by Enron now. So Mr. Caruso is here observing today, and his concerns remain the same as they were back in 2003, pardon me, 2004, when this measure was put on the ballot. Now, I would like to address Mr. Caruso's concerns. Mr. Caruso's concerns are quite the same. I mean, this ballot issue is no longer around. This particular ballot issue is no longer around because Mr. Caruso went to court, the federal district court, and obtained the relief that he sought. He sought to have a ballot go out to the voters in Yamhill County. They did not contain the extremely misleading statement that this measure may cause property taxes to increase more than 3%. As the district court found, the measure at question would in fact cause property taxes to increase by one ten-thousandth of 3%, or if you interpret it in a different way, at most it would cause property taxes to increase by one fiftieth of 3%. So the court found that the statement that is required by ORS 280.0704 to be, in his words, patently false and profoundly misleading. But in a different context, it appears to be true. It would be true only in a very narrow context. But that's not why his interests are different today. Excuse me, Your Honor. I say that's not why his interests are different today. In answer to Judge Clifton's question, he says, well, it's because he went to court. But it's not. It's in spite of his going to court. I mean, the ballot issue is gone, right? Excuse me, he won, Your Honor. When he won in court, he lost at the ballot. That's right. But it's the ballot issue that's at least nominally his broad interest in bringing this action. That's correct. And the circumstances there have not changed. I will get into, if I could, get into mootness in a second and discuss the case that I, this court's very recent case in Gator versus L.L. Bean that I distributed today to Mr. Bichon for the state. I think Gator indicates in this case the applied, when you apply the unconstitutionality as applied to the ballot measure election in Yamhill County in 2004 makes it quite clear that the as applied case is not moot. The case is not moot simply because the plaintiff wins and obtains the relief that he sought. And that's exactly what That's not why it's said to be moot. It's said to be moot because there's no longer a ballot issue, no longer a ballot to be affected. Well, let me get into the Gator case now, if I may. But first, if I may, excuse me. I don't know that I've seen a 28-J submission, although I know the Gator case. Yes. If all you gave us is a citation, you can keep going. If there's something else you gave us, then I confess I haven't seen it. I'm sorry you're wrong. There's nothing else I gave you. What the Gator case states is that the central question before us is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any meaningful relief. It states the Supreme Court has repeatedly held that the requisite case or controversy is absent where a plaintiff no longer wishes or is no longer able to engage in the activity concerning which it is seeking declaratory relief. Now, neither of those circumstances are the case here. There has been no change in Mr. Caruso's circumstance. I'm sure there is. There's no ballot issue in the world. The ballot issue is gone. That is a change. Maybe it might not be very significant from your point of view, but it is a change. The question is whether there is a change in the plaintiff's circumstance. The plaintiff's circumstance is that he is an advocate of public power. There's nothing that prevents him from placing another measure on the ballot. There's nothing that prevents him from participating in the subsequent ballot measures that occurred, for example, in Washington County. We can argue about this, but as Judge Clifton says, we're all familiar with the Gator, I think. And for me, the fact is Gator is not an election case. I'm really more interested in your your novel, I think rather novel argument about, you know, about the First Amendment, because I see no case directly supporting your First Amendment argument. Thank you. I agree with Mr. Bush on the closest you get is all these petition cases, petition gatherer cases. Well, I believe it's a combination of the petition gatherer cases and a CLF versus Buckley and Meyer versus Grant in which the Supreme Court has held that the activity of communicating with voters and persons interested in the petition is very highly protected. And in this case, you can communicate all you want. In this case, the district court made very explicit findings that this communication that the communication with voters was very seriously inhibited. This is a finding of fact based upon the evidence that was presented in the case. What the district court found is the court finds that the three percent warning misleads voters to grossly overestimate the tax consequences of the ballot measure to which the warning attaches. The inclusion of the three percent warning in the title of the measure will inevitably cause voter confusion. That's a finding of fact. And that's not a finding of fact. That's an inference being drawn that we can we've got the same set of facts in front of us. And I've got to say it's the same thing as referred to a minute ago. You can call it grossly misleading or you can call it accurate. It's looking at the same picture from a couple different sides. Your Honor, on page eight of the district court's opinion and order, the district court specifically indicates that he is basing his findings on the evidence in the record where he states in the last paragraph plaintiff has spoken with hundreds of potential voters about measure. Last paragraph of page eight. Page eight of the opinion and order. Yes. Plaintiff has spoken with hundreds of potential voters about the tax consequences they infer are associated with the measure based on the three percent warning. Plaintiff's ability to accurately explain the tax consequences associated with measure 3655 to voters is impaired by state mandated language that is profoundly misleading. Placing the warning on the ballot itself, a place where voters are likely to give great weight to the government authored statement, defendants would eliminate any chance for plaintiff to rebut or clarify the issue to voters. In fact, ballot initiatives are in task with that language there. Yes. It's very difficult to know what the effect has been. And some fail without it. But the point I'm trying to get you to help me on is even the cases he cites to me are not directly on point in support of that proposition. I don't think it's hard for me to buy the argument that that simple phrase on the ballot impedes the plaintiff's First Amendment right. Well, Your Honor, you might want to take into account where it appears on the ballot. Now, the statute itself states that the statement. I think I know where it appears. Well, unfortunately, it may not be clear from the record because the record includes the specimen ballot that does not include the warning because the original ballot proposed by the county did include the warning. But then again, the district court ordered that to be removed. So the actual measure that appeared on the ballot did not include the warning. That's on page 49 of the excerpts of record. So I think it is important to know where this warning goes because it places it in context. The statute states that the statements required by this subsection, which is the 3 percent warning, shall be The question is the 20-word statement. It's the first thing that you see after the caption of the measure. So if you look at excerpts of record, page 49, for example, it says measure 3655, authorize a special levy if Yamhill County PUD is formed. Question, shall voters authorize a levy of .003 for $1,000 of assessed value if a Yamhill County PUD is formed. And then immediately below there is where the 3 percent warning goes. I have with me, for example, the Multnomah County ballot where a similar measure was placed on the ballot in 2003. That's where the warning goes and it states this measure may cause property taxes to increase more than 3 percent when in fact the most it could cause them to increase is 1 50th, pardon me, is 1 150th of 3 percent. Now, Mr. Bushong is correct. If you look at excerpt from record 49, there is additional information presented in the 120-word summary below that. But the statement that this may cause property taxes to increase more than 3 percent is right after the question itself. So it's an extremely prominent position. Well, your Honor, once again the district court made the finding of fact that it does inhibit petitioners from pursuing such measures. On page 10 of his opinion and order, he stated that plaintiff's speech as well as the speech of future ballot measure proponents is chilled when the 3 percent warning is included in the title of a ballot measure that has no chance I agree with Judge Clifton. You know, that's a conclusion of law, whether speech is chilled. Well, I frankly don't feel bound by that. I mean, you know, it is being entitled to clearly erroneous deference. Well, the other case, the other line of cases that I would bring to your attention, of course, is the Grelick line of cases in the U.S. Supreme Court and the Eighth Circuit where the state of Missouri by initiative enacted a constitutional amendment there that required the tagline about whether or not the candidate or the office holder supported or didn't support the term limits pledge. And the statement that was placed on the ballot there next to each candidate's name was actually a true statement. And no one contested that it was not a true statement. Now, in this case, what we have the state doing is on a ballot measure and generally ballot measure, ballot measures are subject to a greater degree and more exacting scrutiny when it comes to limitation on expression and First Amendment rights than candidate elections, as I point out in the memorandum. But  here we have a statement that the district court has found based on evidence is patently false and profoundly misleading. So it's a wonder that we can have that the U.S. Supreme Court can tell us that a true statement, state of Missouri cannot place a true statement next to the name of a candidate, yet the state of Oregon can place a false statement next to a ballot measure question. Was that utilizing the First Amendment free speech aspect? The Eighth Circuit Court of Appeals based its decision on the First Amendment. The United States Supreme Court went instead with the elections clause under the U.S. Constitution. That is, it decided since this would not pass muster on the elections clause, they did not need to reach the First Amendment. The Chief Justice and I believe also Justice O'Connor, yes, did very strongly urge in their concurring opinion. So the answer is the majority opinion, again, doesn't support your position about the First Amendment right. The majority opinion did not reach the First Amendment. That's correct. That's what I said. Yes. So you see it again. I'm searching for a case that directly supports your point. I haven't found one. Well, then, Your Honor, keep in mind. I can understand your point more readily on the due process argument. Yes. From the voters' point of view. But I'm not I don't feel convinced on the First Amendment argument. From a petitioner's point of view. Yes, Your Honor. And what the district court found on the on the due process argument using the cases that Mr. Bushong mentioned, National Audubon and the earlier case found it says the district court stated on page 11 of its order. In fact, here, as important, the court finds that even under the strict reading of National Audubon Society, the 3 percent warning would so mislead voters that they would be unable to decipher the subject of subject of measure thirty six fifty five. The voter is misled to believe that the subject matter of measure thirty six fifty five involves a potentially significant tax increase. The court finds that voters will be unable to recognize the subject of measure thirty six fifty five because voters will be misled by a 3 percent warning that overstates the potential tax consequences of the measure by a factor of at least one hundred and fifty and at most ten thousand. So the court made the findings. That's a fair amount of overstatement, but it's probably more in that statement. The district court paid no attention whatsoever to the context that generated this. The fact that taxes generally go up 3 percent a year, but this is something not subject to that cap. Your Honor, there's no evidence in the record that taxes generally go up by 3 percent in Oregon. Absolutely nothing. You can stick with that position, but I can't tell you it's going to be a winner. On the subject of 3 percent assessments, the difference between assessment and taxation levels, there is a vast difference. In Oregon, there is a limitation that your property tax assessment cannot go up by more than 3 percent a year. That is only tangentially related to whether your property taxes go up or down 3 percent or some other number. If you look at the excerpts of record, you will find that Mr. Bussong's assessment goes up 3 percent a year for a period of two or three years. And we find it both in Multnomah County and Marion County, a couple of the larger counties in Oregon. You're looking at about ten of these local option tax elections per year. And there are dozens of taxing jurisdictions. The fact that your assessment may be limited to 3 percent doesn't tell you much of anything about how your property taxes are going to change. In fact, Mr. Bussong's presentation this morning assumes that your property tax assessment goes up 3 percent, and none of the other several dozen local taxing authorities in each county does anything to change their assessments. When in fact, his own excerpts of record point out that in an average year, ten of them are changing their tax assessments. The only way his analysis is correct that assessments are rates. Oh, excuse me, Your Honor. Rates. The assessments are unified, but the rates for each taxing authority are determined by the taxing authority itself. And there are dozens of them in each county. And that's the reason the statute only says may cause and doesn't say will cause. Right. Well, what the statute says argument. Yes, Your Honor. It says it may cause property taxes to increase more than 3 percent. And when you think about it, that would be that's like threading the needle. We're talking here about a property tax assessment in this ballot measure that is one fiftieth. We all understand that. We know the argument. Yes. So if I may, Your Honor, even Mr. Bussong agrees it could have been more artfully worded. It meaning the statute. Right. The required language on the ballot title. But, you know, Your Honor, when you think about it, it's almost impossible for that for it ever to be correct, because if you like Mr. Bussong says you assume the property. Correct. You say, for instance, you know, any taxes raised by this measure would not be subject to the 3 percent limit. That would be correct. But that's not what the statute requires. When you said it could never be correct. That's not what the statute requires. The same thought in a different way. I don't believe so. And I don't believe the district court found that the district court found that it was profoundly misleading and that voters would believe that it was this measure that was causing property taxes to increase more than 3 percent in particular, because the language of the statute is that this measure may cause property taxes to increase more than 3 percent, not that it may potentially contribute to that. Now, on his assessment argument, if the assessment goes up 3 percent, then yes, this would cause property taxes to go up by more than 3 percent, up to approximately 3.015 percent. However, that assumes that all other taxing authorities in the county do nothing. If any taxing authority in the county does anything, that means that this measure will not cause property taxes to increase more than 3 percent, because they will either already be more than 3 percent increased without this cause, or they won't be increased by 3 percent because the other taxing authorities will have reduced their rates. So the instance where this statement could have been correct on this measure 3655 are astoundingly infinitesimal. It would be helpful to me if you could go through again, in connection with Judge Graylick. I would refer primarily to the Graylick line of cases. To what? The Graylick line of cases involving the ballot tag in Missouri, which where the Eighth Circuit did depend on the First Amendment, as well as two of the justices of the Supreme Court. So that's the Cook case at the Supreme Court level and the First Amendment cases, what the courts have found is that the state cannot require speech that is not content neutral. And in this case, placing a tag immediately under the question, the 20-word question, that states that this may cause property taxes to increase more than 3 percent is not content neutral. It's certainly less content neutral than stating whether a person, a person is entitled to a certain amount of property taxes. As Chief Justice Rehnquist stated in that case, it directs the voters' attention to a particular topic, a particular very narrow topic, and that is how much this may or may not increase property taxes. And in the Graylick case, they found that simply the narrowing of that topic to the question of the term limits and their position on term limits itself was a violation of the First Amendment rights of the candidates. And of course, correlatively, the First Amendment rights of voters as well. In this case, we have not a true statement, but a statement that the District Court found to be patently false. Thank you. Just briefly, Your Honor, in response, two points. The Gator case that Mr. Meek refers to became moot because of a settlement agreement between the parties. The cases that are more on point are the ones cited in our brief, Arizonans for Official English, and then a series of Ninth Circuit cases that make the distinction between a case that becomes moot because of an election or some other reason that is not attributed to the conduct of the parties. So those cases, I think, are more on point on the mootness question. And then the only other point I'd like to raise is the Graylick case, Cook v. Graylick, that counsel referred to in his argument. A couple points on that. The analysis that the Eighth Circuit used in finding that there was a First Amendment violation was that by putting this tag next to a candidate's name, it was, in a sense, compelled speech, requiring the candidate to take a stand on term limits. The Supreme Court, of course, the majority did not decide it on that basis, decided it on the basis of the election clause. And even Justice Graylick did not buy that footnote. And unfortunately, they didn't number the footnotes. It's just marked by an asterisk in the opinion. But he says, I can't agree with this compelled speech analysis. So he didn't buy that compelled speech analysis of the Eighth Circuit either. And his First Amendment, he was essentially equating the giving the candidate a right not to be tainted by this tag. That was his his the First Amendment right that he found. And it was specific to the candidate. That was it. And that certainly wasn't the majority opinion of the of the court. Let me ask the question. I've been meaning to ask early, but I forgot on both sides. And Judge Hagerty really didn't address on the First Amendment issue the standard of review. Since it is First Amendment, you agree it's strict scrutiny? I don't. And I think that is the key. When you look at the cases we cited in our opening brief, not only the Supreme Court case of ACLF v. Buckley, but the Washington initiatives now, the California Right to Life Council v. Getman, two Ninth Circuit cases, where the court says it's kind of a weighing. First, we look at whether or not the extent to which the statute in question restricts First Amendment rights. And if there's a substantial restriction of those rights, then, of course, it has to be justified by compelling state interest. But if it's not a substantial, then the state's interest doesn't need to be as strong. And I think that's the analysis that's been adopted both by the Supreme Court and by the circuit. Well, and then the question of whether it's substantial or not, do we defer to Judge Hagerty's findings? Well, I don't think there are any factual findings that are pertinent here because the as-applied challenge is moot. I think when you're talking about a facial challenge, then it's a question of law clearly, and his conclusions of law are ones that you don't have to defer to. Unless there are other questions. Thank you. We thank both counsels for their arguments. This case and all the others today, if I missed any, will be submitted. And for that, we are concluded for the day and will recess until tomorrow morning. Thank you.
judges: Hug, Tashima, Clifton